**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **CLAIRPATH, LLC,**<br><br>*Plaintiff and Counterclaim Defendant,*<br><br>v.<br><br>**APPLE INC.,**<br><br>*Defendant and Counterclaim Plaintiff.* | Case No. 7:26-cv-00015-LS<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. DISPUTED CLAIM TERMS .......... 2

A. "wherein the first light blocking layer includes at least one selected from the group consisting of Cu, W, Ti, Ta, Co, Al and Mo" ('809 patent, claim 6) .......... 2

B. "control module" ('948 patent, claims 1, 3, 5, 6); "output module" ('948 patent, claim 1); "communication module transmitting/receiving messenger information" ('948 patent, claim 1) .......... 3

1. The "module" terms should be construed according to § 112 ¶ 6. .......... 4

a) The Intrinsic Record Does Not Impart Structure to "Module." .......... 4

b) Clairpath's Expert Does Not Show "Module" is Structural. .......... 7

2. The '948 Patent Specification Does Not Disclose Required Structure. .......... 7

C. "at least one of…and" ('948 patent, claim 1) .......... 9

D. "location information" ('948 patent, claims 1, 6, 12) .......... 10

E. "screen division function" ('948 patent, claim 7) / "dividing a screen of the navigation device" ('948 patent, claim 12) .......... 12

F. "in response to a content information providing request" ('708 claims 1, 6) .......... 13

G. "the content provider's server" ('708 claims 1, 6) .......... 14

III. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Amneal Pharms. LLC*,
945 F.3d 1368 (Fed. Cir. 2020)....................2, 3

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014)....................5

*Apple Inc. v. Smart Mobile Techs. LLC*,
No. 2024-1352, 2026 WL 160563 (Fed. Cir. Jan. 21, 2026)....................11, 13

*Augme Techs., Inc. v. Yahoo! Inc.*,
755 F.3d 1326 (Fed. Cir. 2014)....................8

*Blackboard, Inc. v. Desire2Learn, Inc.*,
574 F.3d 1371 (Fed. Cir. 2009)....................7

*Continental Circuits LLC v. Intel Corp.*,
915 F.3d 788 (Fed. Cir. 2019)....................11

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
469 F.3d 1005 (Fed. Cir. 2006)....................4, 5

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
435 F.3d 1366 (Fed. Cir. 2006)....................14

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509 (Fed. Cir. 2012)....................8

*Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*,
93 F.3d 766 (Fed. Cir. 1996)....................14

*GPNE Corp. v. Apple Inc.*,
830 F.3d 1365 (Fed. Cir. 2016)....................11, 13, 14

*In re Harnisch*,
631 F.2d 716 (C.C.P.A. 1980)....................1, 3

*HD Silicon Solutions LLC v. Microchip Technology Inc.*,
127 F.4th 919 (Fed. Cir. 2025)....................3

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014)....................11

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
558 F.3d 1368 (Fed. Cir. 2009)....................11

*Intell. Ventures II LLC v. FedEx Corp.*,
No. 16-980-JRG, 2017 WL 5896180 (E.D. Tex. Nov. 29, 2017) ....................5

*Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*,
No. 8-874, 2014 WL 129799 (D. Del. Jan. 14, 2014) ....................10

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996)....................1

*Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*,
800 F.3d 1366 (Fed. Cir. 2015)....................4

*Micropairing Techs. LLC v. Toyota Motor Mfg. Tex. Inc.*,
No. 21-940, 2022 WL 62540 (W.D. Tex. Jan. 5, 2022) ....................10

*In re Morris*,
127 F.3d 1048 (Fed. Cir. 1997)....................6

*Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*,
831 F.3d 1350 (Fed. Cir. 2016)....................1

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)....................2, 6

*Noah Sys., Inc. v. Intuit Inc.*,
675 F.3d 1302 (Fed. Cir. 2012)....................8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)....................1

*Power-One, Inc. v. Artesyn Techs., Inc.*,
No. 5-63, 2007 WL 896093 (E.D. Tex. Mar. 22, 2007) ....................10

*Profectus Tech. LLC v. Huawei Techs. Co.*,
823 F.3d 1375 (Fed. Cir. 2016)....................12, 14

*Ravgen, Inc. v. Natera, Inc.*,
No. 1:20-cv-00692-ADA, 2024 WL 116317 (W.D. Tex. Jan. 10, 2024)....................2

*Salazar v. Procter & Gamble Co.*,
414 F.3d 1342 (Fed. Cir. 2005)....................6

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*,
948 F.3d 1342 (Fed. Cir. 2020)....................5

*Satius Holding, Inc. v. Samsung Elecs. Co.*,
No. 18-cv-850, 2024 WL 5090284 (D. Del. Dec. 12, 2024) ....................................................6

*SecurityProfiling, LLC v. Trend Micro Am., Inc.*,
No. 3:17-CV-1484-N, 2018 WL 4585279 (N.D. Tex. Sept. 25, 2018) ....................................5

*SuperGuide Corp. v. DirecTV Enterprises*,
358 F.3d 870 (Fed. Cir. 2004)............................................................................1, 9, 10

*Toro Co. v. White Consol. Indus., Inc.*,
199 F.3d 1295 (Fed. Cir. 1999)...........................................................................12, 14

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)...................................................................................14

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015)............................................................................ *passim*

*Zeroclick, LLC v. Apple Inc.*,
891 F.3d 1003 (Fed. Cir. 2018)...................................................................................5

**Statutes**

35 U.S.C. § 112 ¶ 2 .........................................................................................................9

35 U.S.C. § 112 ¶ 6 ....................................................................................................4, 6

**Other Authorities**

37 C.F.R. § 1.552(a)..................................................................................................2, 6

37 C.F.R. § 1.552(c)..................................................................................................2, 6

MPEP § 2117 (9th ed. Rev. 01.2024, Nov. 2024) ...............................................................3

## TABLE OF EXHIBITS

| Exhibit | Description |
| --- | --- |
| 9 | Reply Declaration of Dr. Benjamin B. Bederson Regarding Claim Construction |
| 10 | Grant of *ex parte* reexam for U.S. Patent No. 8,996,708 |

## I. INTRODUCTION

Clairpath does not say what the disputed claim terms mean. For every term, it offers only "plain and ordinary meaning," which would leave the parties to argue claim scope to the jury at trial. But claim construction "is an issue for the judge, not the jury." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). Where the parties dispute what the claim language covers, a "plain and ordinary meaning" label does not resolve that dispute. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("[P]lain and ordinary meaning' may be inadequate…when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."). Leaving these disputes unresolved now will delay their resolution and inject uncertainty into the case.

For the '809 patent, the parties agree that claim 6 recites a closed Markush group. They disagree about what that group requires. Apple's construction gives the group effect: whatever else the first light blocking layer contains, it must contain at least one of the seven recited metals in metallic form. That is how the Federal Circuit and its predecessor have long treated Markush groups. *See Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1358 (Fed. Cir. 2016) ("consisting of" creates a "very strong presumption" that a Markush group is closed); *In re Harnisch*, 631 F.2d 716, 722 (C.C.P.A. 1980).

For the '948 patent, Clairpath never identifies any structure for the "module" terms. That silence confirms indefiniteness. Under the Federal Circuit's *en banc* decision in *Williamson*, a "module" claimed only by what it does, and not by what it is, is a means-plus-function term that fails if the specification discloses no corresponding structure. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350-52 (Fed. Cir. 2015). Clairpath also asks the Court to set aside *SuperGuide* and the cases reaffirming it, but offers no principled basis to distinguish them. And for "location information," "screen division function," and "dividing a screen of the navigation device,"

Clairpath discounts the patent's written description to advocate for a claim scope broader than what the specification supports.

For the '708 patent, Clairpath concedes that "the content provider's server" has no antecedent basis in the claims and never appears outside the claims. Clairpath faults Apple for not raising indefiniteness in its reexamination request, but the USPTO may not decide the indefiniteness of original claims in a reexamination, so Apple could not have raised it there. *See* 37 C.F.R. § 1.552(a), (c). Clairpath also identifies no evidence that would tell a person of ordinary skill in the art what that term covers, as *Nautilus* requires, and no intrinsic evidence supporting its broad reading of "in response to a content information providing request."

## II. DISPUTED CLAIM TERMS

### A. "wherein the first light blocking layer includes at least one selected from the group consisting of Cu, W, Ti, Ta, Co, Al and Mo" ('809 patent, claim 6)

| Apple's Construction | Clairpath's Construction |
|---|---|
| This term should be construed as a closed Markush group, meaning "the first light blocking layer must include at least one of the following metals: Cu, W, Ti, Ta, Co, Al and Mo." | Plain and ordinary meaning |

One question divides the parties. Clairpath agrees that "at least one selected from the group consisting of" creates a closed Markush group. Dkt. 50 at 5. Clairpath then argues that because the first light blocking layer "includes" a group member, the layer is open-ended and may contain other materials. Dkt. 50 at 6. Apple agrees only with that limited point: "includes" keeps the layer open; it does not reopen the closed Markush selection or change the identity of the selected member. *Ravgen* makes the same distinction: the sample was open-ended, but the selected "agent" had to come from the closed Markush group. *Ravgen, Inc. v. Natera, Inc.*, No. 1:20-cv-00692-ADA, 2024 WL 116317, at *1-2 (W.D. Tex. Jan. 10, 2024). *Amgen* likewise holds that open "comprising" language may allow additional components, but the claim still requires at least one

component selected from the recited Markush group. *Amgen Inc. v. Amneal Pharms. LLC*, 945 F.3d 1368, 1377-79 (Fed. Cir. 2020). Thus, Apple's construction does not require the entire layer to consist only of Cu, W, Ti, Ta, Co, Al, or Mo; it requires the layer to include, as the selected Markush member, at least one of those seven metals in metallic or elemental form.

That construction follows from *Harnisch*. The governing Markush test asks whether the listed alternatives share structural similarity and common use. *In re Harnisch*, 631 F.2d 716, 721-22 (C.C.P.A. 1980); Apple Br. at 6-7; Dkt. 50 at 6 n.1. USPTO guidance applying *Harnisch* explains that alternatives in a combination or process must be substitutable for one another with the expectation that the same intended result will be achieved. MPEP § 2117 (9th ed. Rev. 01.2024, Nov. 2024). Here, the shared class is not "materials containing atoms of Cu, W, Ti, Ta, Co, Al, or Mo"; it is elemental metals used as a deposited light-blocking metal layer. The specification says the light blocking layer is formed by filling trenches with a "metal layer," states that "metal layer 110a" may include the seven listed metals, and gives tungsten as the example.

*HD Silicon Solutions* confirms the point. The Federal Circuit rejected a construction of "comprising tungsten" that included tungsten compounds, holding that unmodified "tungsten" required elemental tungsten because the intrinsic record used compound language when compounds were intended and referred to tungsten alone when the element itself was intended. *HD Silicon Solutions LLC v. Microchip Technology Inc.*, 127 F.4th 919, 923-25 (Fed. Cir. 2025). The same is true here: claim 6 lists elemental symbols, not oxides, silicides, nitrides, or other compounds. Clairpath's "plain meaning" position therefore has no limiting principle. The intrinsic evidence and the case law compel Apple's construction.

### B. "control module" ('948 patent, claims 1, 3, 5, 6); "output module" ('948 patent, claim 1); "communication module transmitting/receiving messenger information" ('948 patent, claim 1)

| Apple's Construction | Clairpath's Construction |
|---|---|
| Subject to 35 U.S.C. § 112 ¶ 6; Indefinite. | Plain and ordinary meaning. Not subject to 35 U.S.C. § 112 ¶ 6. Not indefinite. |

**1. The "module" terms should be construed according to § 112 ¶ 6.**

Each "module" term is a means-plus-function term under § 112 ¶ 6. Because the specification discloses no corresponding structure for those terms, claims 1-7, 9, and 11 are indefinite. Clairpath argues that Apple has not overcome the presumption against § 112 ¶ 6 because "the claim and specification supply structural context." Dkt. 50 at 10-11. But Clairpath relies on the same kinds of evidence – the bare word "module," nondescript connections between boxes, and conclusory expert testimony – that the Federal Circuit held insufficient to avoid means-plus-function treatment in *Williamson*, 792 F.3d at 1350-52.

**a) The Intrinsic Record Does Not Impart Structure to "Module."**

Clairpath says Fig. 1 shows a "particular structure," but Fig. 1 shows only functionally named boxes joined by nonspecific lines. The specification passages Clairpath cites at pages 12-13 likewise describe the claimed modules' functions, not their structure. Ex. 9, Bederson Reply Decl. ¶ 59. Therefore, although the specification "describe[s] certain inputs and outputs at a very high level" and describes the modules "in a certain level of detail," it "fails to impart any structural significance" to them. *Williamson*, 792 F.3d at 1351; *see also* Bederson Decl. ¶¶ 59-62. Clairpath cannot create structure where none exists by arguing "module" boxes in Fig. 1 are "connected to various part[s] of the system," describing "how the [module] functions," or listing "functional components." *Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*, 800 F.3d 1366, 1372-73 (Fed. Cir. 2015) (applying *Williamson* to find "compliance mechanism" a means-plus-function term).

Clairpath's cited cases do not fit these facts. In *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, the Federal Circuit linked the claim term to a specific physical component of the claimed device, a "particular cylindrical insert." 469 F.3d 1005, 1023-24 (Fed. Cir. 2006). In

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, the Federal Circuit held that the PTAB's means-plus-function finding was improper because the PTAB had already equated the claim term to a particular structure, a CPU.[1] 948 F.3d 1342, 1354 (Fed. Cir. 2020). Nothing comparable exists here. Neither Clairpath nor Dr. Conte identifies any claimed module as a particular physical component (as in *DePuy Spine*), a particular kind of processor (as in *Samsung*), hardware, software, or anything else. As Dr. Bederson explains, a person of ordinary skill in the art would not understand a bare "module" to be "sufficient structure for performing [the claimed] function[s]." *Williamson*, 792 F.3d at 1349; Bederson Reply Decl. ¶¶ 45-55.

Clairpath asserts that claim 1 recites no function for "control module," but the claims assign that module numerous functions, including setting an alarm region, retrieving specific maps, and map-matching locations to retrieved maps. Dkt. 47 at 9-10 (addressing "control module" functions). Clairpath does not dispute that the other "module" terms in claim 1 likewise have numerous associated functions. *Id.* at 9-11, 13-15, 17. Nor does Clairpath dispute that "the patentee must disclose adequate corresponding structure to perform <u>all</u> of the claimed functions." *Williamson*, 792 F.3d at 1351-52; Bederson Decl. ¶¶ 56-67.

Clairpath argues that Apple did not propose constructions in its *ex parte* reexamination

---

[1] Clairpath asserts that courts "routinely" decline to apply means-plus-function treatment to "module" terms but cites one out-of-district case where the specification disclosed detailed structure, including modems programmed to communicate using Cellular Digital Packet Data. *Intell. Ventures II LLC v. FedEx Corp.*, No. 16-980-JRG, 2017 WL 5896180, at *39 (E.D. Tex. Nov. 29, 2017). Clairpath's other cases are inapposite. *Zeroclick, LLC v. Apple Inc.* found "no record evidence" on whether the terms connoted structure, 891 F.3d 1003, 1007-08 (Fed. Cir. 2018), and in *SecurityProfiling, LLC v. Trend Micro Am., Inc.* neither party offered extrinsic evidence, No. 3:17-CV-1484-N, 2018 WL 4585279, at *3 (N.D. Tex. Sept. 25, 2018). Apple, by contrast, cites the claims (Dkt. 47 at 9-10, 14, 17), the specification *(id.* at 10, 14-15, 17), and Dr. Bederson's testimony (Bederson Decl. ¶¶ 56-87; Bederson Reply Decl. ¶¶ 43-74). Finally, *Apple Inc. v. Motorola, Inc.* predates *Williamson* and applied the now-rejected "strong presumption" against means-plus-function treatment. 757 F.3d 1286, 1298 (Fed. Cir. 2014).

("EPR") request and that forecloses indefiniteness here. It does not. The USPTO examines original claims in an EPR only on the basis of patents and printed publications and will not resolve indefiniteness. 37 C.F.R. § 1.552(a), (c). The EPR examiner recognized as much, explaining that a third-party requester is "prohibited from advancing indefinite[ness] positions for original claims." Ex. 10 at 27. The proceedings also apply different claim construction standards. The USPTO applies the broadest reasonable interpretation in an EPR, while this Court construes claims under *Phillips*. *In re Morris*, 127 F.3d 1048, 1054 (Fed. Cir. 1997). And a claim need not be "insolubly ambiguous" to be indefinite. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910-12 (2014). Therefore, Apple mapping these terms to the prior art in EPR is not inconsistent with Apple's indefiniteness argument here. *See Satius Holding, Inc. v. Samsung Elecs. Co.*, No. 18-cv-850, 2024 WL 5090284, at *9 n.11 (D. Del. Dec. 12, 2024).

Clairpath also contends that the applicant's amendment replacing "device" with "module" shows that "module" is structural. Dkt. 50 at 13-14. It shows the opposite. The examiner rejected the original claims as "narrative in form" for failing to "clearly set forth the structure of the system which carries out the described functions." Dkt. 50 at 13, Ex. I (Non-Final Rejection dated May 10, 2012) at 2. The applicant answered that objection by substituting one nonce word for another, identifying no structure beyond the word "module." The amendment therefore carries no weight under § 112 ¶ 6. *Williamson*, 792 F.3d at 1350. That the examiner withdrew the rejection does not help Clairpath. The examiner never conducted a § 112 ¶ 6 analysis or found that "module" connotes structure. Nor do the examiner's prior-art mappings define claim scope, because "unilateral statements by an examiner do not give rise to a clear disavowal of claim scope by an applicant." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005); *see* Dkt. 50 Exs. I-K; Conte Decl. ¶ 36; Bederson Reply Decl. ¶¶ 56-62.

**b) Clairpath's Expert Does Not Show "Module" is Structural.**

Clairpath's expert, Dr. Conte, identifies no structure for the claimed "modules." He states only that a "module" would be a "self-contained, replaceable structural component with defined inputs and outputs that can be integrated into a larger system," and cites a dictionary defining a "module" as a generic "unit that performs one or more tasks." Dkt. 50 Ex. F at ¶ 34. He never explains how that generic component would perform functions the claims assign to the three separate "module" limitations, which he does not address individually. Like the expert in *Williamson*, he "fails to describe how the [claimed] module, by its interaction with the other [claimed] components…is understood as the name for structure." *Williamson*, 792 F.3d at 1351. Dr. Bederson, by contrast, addressed each "module" term separately and confirmed that none has a reasonably well understood meaning in the art or would be capable of performing the claimed functions. Bederson Decl. ¶¶ 56-62, 68-75, 81-87; Bederson Reply Decl. ¶¶ 45-55.

**2. The '948 Patent Specification Does Not Disclose Required Structure.**

Clairpath argues that even if the "module" terms are means-plus-function terms, they are not indefinite because the claimed functions are "basic" and can be performed "without special programming." Dkt. 50 at 16. Clairpath first points to Fig. 1, which Clairpath says shows "an integrated architecture in which the modules are named, numbered, and interconnected." Dkt. 50 at 12. But Clairpath never explains how those boxes or connections perform the claimed functions. It instead relies on passages that repeat each module's claimed functions and state that the module connects to other modules. Dkt. 50 at 14-18; *id.* Ex. F (Conte Decl.) ¶¶ 40-42.

Labeled boxes joined by high-level interconnections are exactly the kind of featureless disclosure the Federal Circuit has repeatedly held insufficient to show structure. Such a box is "an abstraction…essentially a black box that performs a recited function." *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1383 (Fed. Cir. 2009); *see also Williamson*, 792 F.3d at 1351;

*Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1317 (Fed. Cir. 2012) (disclosures that simply "restate[] the function" do not provide sufficient structure); *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1338 (Fed. Cir. 2014); *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 518 (Fed. Cir. 2012). Consistent with these cases, Dr. Bederson explained that the numerous claimed functions cannot be performed by a black-box "module" or by a general-purpose computer without specialized programming. Bederson Decl. ¶¶ 64, 77, 89; Bederson Reply Decl. ¶ 63.

For the "control module," Clairpath and Dr. Conte assert that the specification shows "how the control module" performs the claimed functions. Dkt. 50 at 14-15 (citing 4:55-5:10, 5:27-49, 6:66-7:2, Fig. 1); Conte Decl. ¶ 40. The cited passages only recite those functions; none explains how the box labeled "control module" performs them. Clairpath then points to the "operational steps" in Fig. 4. Dkt. 50 at 15. That does not help. First, Clairpath argues the "control module" can perform the claimed function without any algorithm. *Id.* at 16-18. Second, Fig. 4 provides no algorithm; it restates functions (map retrieval, map matching, *etc*.). Dkt. 47 at 12-13. Each of those functions requires special programming. Bederson Decl. ¶ 65; Bederson Reply Decl. ¶¶ 65-67.

The same is true of the "output module." Clairpath and Dr. Conte rely on generic statements about the claimed functions, not structures capable of performing them. Dkt. 50 at 13 (citing 3:46-47, 3:51-64, Fig. 1); Conte Decl. ¶ 41. Neither Clairpath nor the specification explains how a touchscreen outputs speech. *See Williamson*, 792 F.3d at 1351-52 ("the patentee must disclose adequate corresponding structure to perform all of the claimed functions."); Bederson Decl. ¶¶ 68-80; Bederson Reply Decl. ¶¶ 68-71. So too for the "communication module," where Clairpath and Dr. Conte again focus on the function—transmitting location information—rather than a structure capable of performing it. Dkt. 50 at 15-16 (citing 3:65-67, 4:6-10, 6:57-61, Fig. 1); Conte Decl. ¶ 42; *see also* Bederson Reply Decl. ¶ 72.

Finally, Clairpath points to Fig. 4 as algorithmic structure, but never links any part of Fig. 4 to any claimed function. In any event, Fig. 4 is a vague flow chart that repeats the claimed functions without providing algorithm steps for performing them. Dkt. 47 at 12-13, 16, 18; Bederson Decl. ¶¶ 65, 78, 91; Bederson Reply Decl. ¶ 73.

In sum, the claims recite functions for each of the three modules; the specification names the modules, draws them as boxes in Fig. 1, and describes what they do; but the specification never discloses a structure or an algorithm for performing any of the claimed functions. Claims 1-7, 9, and 11 are therefore indefinite under § 112 ¶ 2 by clear and convincing evidence.

### C. "at least one of…and" ('948 patent, claim 1)

| Apple's Construction | Clairpath's Construction |
|---|---|
| Requires the messenger information transmitted/received through the messenger program to include all four claimed categories of information: destination information, navigation device location information, destination description information, and communication information | Plain and ordinary meaning |

In *SuperGuide Corp. v. DirecTV Enterprises*, the Federal Circuit held that "at least one of" preceding a categorical list where the listed items are joined by "and" should be construed to require the presence of all items in the list. 358 F.3d 870, 886 (Fed. Cir. 2004). Clairpath disagrees, but *SuperGuide* controls. Here, the specification uses conjunctive language when defining messenger information: "The messenger information may include destination information, navigation device location information, destination description information, and communication information." '948 patent at 4:11-13 (emphasis added). Apple's construction faithfully tracks this language. Clairpath agrees that the specification uses conjunctive language when describing the four listed types of information (Dkt. 50 at 19-20), but wrongly argues that "permissive" language in the specification ("the messenger information may include…") means that *SuperGuide* does not apply. On the contrary, in *SuperGuide*, the Federal Circuit addressed materially identical

permissive language and found that it supported a conjunctive reading. 358 F.3d at 887 (addressing conjunctive language starting with "the [predetermined] selection criteria 17 may include").

Clairpath also points to specification sections describing how one or more categories of information are sent, received, or used, arguing that these references to less than all categories require a disjunctive reading. Dkt. 50 at 20. *SuperGuide* addressed that same argument, explaining that a passage addressing less than all the categories "does not teach that a value for less than all the designated categories can be chosen." *Id.* at 887.[2]

Clairpath argues that Apple treated the four categories disjunctively in its reexamination request by mapping them to different prior art references. Dkt. 50 at 20-21. In fact, Apple mapped the four categories to different references as part of a single obviousness combination precisely because the claim requires all four types of information. Dkt. 50 Ex. B at 47-61. To the extent it bears on claim construction at all, Apple's reexamination request supports Apple's construction.

**D. "location information" ('948 patent, claims 1, 6, 12)**

| **Apple's Construction** | **Clairpath's Construction** |
|---|---|
| Information for a specific location generated by a GPS module that is capable of being displayed as a position on a map to show the location of a navigation device | Plain and ordinary meaning |

Clairpath argues that Apple "import[s] limitations from exemplary embodiments." Dkt. 50 at 21. On the contrary, Apple's construction is based on the specification's repeated and consistent description of "location information" as generated by the GPS module ('948 patent at 3:35-40; 3:41-43; 4:44-48; 4:55-60; 5:46-48) and capable of being displayed as a position on a map (*id.* at

[2] Clairpath's cases involved patents where the intrinsic evidence showed a disjunctive intent, unlike here. *See Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, No. 8-874, 2014 WL 129799, at *3 (D. Del. Jan. 14, 2014) ("every embodiment…uses only one of [A] or [B], not both"); *Micropairing Techs. LLC v. Toyota Motor Mfg. Tex. Inc.*, No. 21-940, 2022 WL 62540, at *19 (W.D. Tex. Jan. 5, 2022) (binary choice of "at least one of wired and wireless"); *Power-One, Inc. v. Artesyn Techs., Inc.*, No. 5-63, 2007 WL 896093, at *14 (E.D. Tex. Mar. 22, 2007) (specification taught not all categories were required).

2:16-18; 3:35-45; 7:7-9; 7:17-25; Figs. 2-3). The specification describes no alternative type or source of location information, and every reference ties it to the GPS module.[3] Clairpath's purported plain and ordinary meaning construction is broader than the specification supports.

Clairpath wrongly frames Apple's construction as importing a limitation from an embodiment. Courts do not read limitations from embodiments into claims, *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014), and Apple does not ask the Court to do so here. Instead, Apple's construction reflects what "location information" means to a skilled artisan reading this patent. This is the correct *Phillips* inquiry, in which the specification is "always highly relevant" and "usually…dispositive." *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 796 (Fed. Cir. 2019); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009). "[W]hen a patent 'repeatedly and consistently' characterizes a claim term in a particular way, it is proper to construe the claim term in accordance with that characterization." *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016); *Apple Inc. v. Smart Mobile Techs. LLC*, No. 2024-1352, 2026 WL 160563, at *6 (Fed. Cir. Jan. 21, 2026); Dkt. 47 at 22, 24-25. Where the specification repeatedly and consistently describes a claim term in a particular way, the Court may construe it accordingly without finding express disavowal. *GPNE*, 830 F.3d at 1370-71; *Smart Mobile Techs.*, 2026 WL 160563, at *6. Thus, Clairpath's disclaimer cases are beside the point.

Clairpath's premise—that Apple relies on a "single example"—also is wrong. The '948 specification is replete with descriptions of GPS generation and mapping of location information. Dkt. 47 at 20-22. And Clairpath does not assert that location information may be non-mappable or

---

[3] Apple offered to drop "generated by a GPS module" from its construction only if the Court adopts the remainder of the construction (or if Clairpath agrees to it). Dkt. 47 at 22 n.5. Clairpath argues that a limitation Apple would drop cannot be one the intrinsic record requires, Dkt. 50 at 23, but narrowing disputes for the Court is not a concession that the intrinsic evidence fails to support GPS-generation and map-displayability claim requirements.

generated by anything other than a GPS module. *See Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1301-02 (Fed. Cir. 1999) (limiting claims where the specification "does not describe an invention broader than" the sole embodiment); *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1380-81 (Fed. Cir. 2016) (same). Apple's construction does not render claim 1's "output module displaying the location information … on a map" limitation superfluous, either. Dkt. 50 at 22-23. Construing "location information" to include map-displayable characteristics describes a property of the information; the output module limitation requires a particular component to display it. The two requirements do not overlap.

### E. "screen division function" ('948 patent, claim 7) / "dividing a screen of the navigation device" ('948 patent, claim 12)

| Apple's Construction | Clairpath's Construction |
|---|---|
| "screen division function": "A function of the output module that splits the display screen into two substantially equal display areas, each displaying a separate map"<br><br>"dividing a screen of the navigation device": "splitting the screen of the navigation device into two substantially equal display areas, each displaying a separate map" | Plain and ordinary meaning |

Clairpath again uses "plain and ordinary meaning" to advance a meaning broader than the intrinsic evidence supports. Clairpath takes issue with Apple's reliance on a "single figure," but Fig. 3 is the only figure that depicts the "screen division function" or "dividing a screen." Dkt. 50 at 23; Bederson Decl. ¶ 96; Bederson Reply Decl. ¶¶ 76-77, 79. It shows a screen divided into two vertically stacked display areas of substantially equal size, each displaying a separate map, and the specification discloses no other screen-division method.

Clairpath argues that claim 7's "at least one map" language shows the screen can be divided into more than two areas. Dkt. 50 at 24-25. But as Clairpath acknowledges, "Claim 7 ties the number of maps to the number of devices" in claim 6, from which claim 7 depends. Dkt. 50 at 24.

Claim 6 references only two navigation devices: a "navigation device" and an "other navigation device." Clairpath's own premise therefore supports Apple's construction requiring two display areas. Bederson Reply Decl. ¶¶ 77-78. Clairpath also argues that Apple identifies no disavowal of claim scope. Dkt. 50 at 24. Once again, because the specification repeatedly and consistently describes the claim term in a particular way, the Court may construe it accordingly without finding disclaimer. *GPNE*, 830 F.3d at 1370-71; *Smart Mobile Techs.*, 2026 WL 160563, at *6; *supra* at Section II.D. For each of these reasons, Clairpath cannot expand "screen division function" or "dividing a screen" beyond the only division the specification describes.

### F. "in response to a content information providing request" ('708 claims 1, 6)

| Apple's Construction | Clairpath's Construction |
|---|---|
| "in response to a user request on the navigation device to provide content information" | Plain and ordinary meaning |

Clairpath seeks an expansive, undefined construction under which the "request" could be any signal. That is not what the '708 patent describes or claims. The specification repeatedly and consistently describes the "content information providing request" as a user request made on the navigation device. *See* '708 patent at 4:13-22, 5:47-50, 6:10-31, Figs. 4-5; Bederson Reply Decl. ¶¶ 81-82. *Smart Mobile Techs.* is on point. There, the claims said nothing about user intervention, but the specification's repeated and consistent description of switching without user intervention supported a construction requiring switching "without the need for user intervention." 2026 WL 160563, at *6. The same reasoning applies here, except without the negative limitation—the claim must be construed to require a user request on the navigation device in light of the specification.

Clairpath attempts to argue around the specification's repeated and consistent description by claiming that the specification uses "content information providing request" in a context unrelated to a user request when describing the server connecting unit. Dkt. 50 at 26. But the

passage Clairpath cites ('708 patent at 5:47-50) describes a later step in the claimed sequence, connecting to a content managing server, that occurs after the content information providing request. '708 patent at 5:40-50, Fig. 3. Thus, Clairpath's citation is not relevant to the claim construction at issue. By contrast, every disclosure that describes how the request is made, which is the relevant step in the claimed sequence, shows a user request on the navigation device. '708 patent at 4:13-22, 6:9-25, Fig. 4; Bederson Reply Decl. ¶ 83. Thus, the Court should construe "in response to a content information providing request" to require a user request on the navigation device. *Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996); *see also Toro*, 199 F.3d at 1301-02; *Profectus*, 823 F.3d at 1380-81; *GPNE*, 830 F.3d at 1370-71.

### G. "the content provider's server" ('708 claims 1, 6)

| Apple's Construction | Clairpath's Construction |
|---|---|
| Indefinite | Plain and ordinary meaning. Not indefinite. |

Clairpath agrees that "the content provider's server" lacks antecedent basis and concedes that the term never appears in the specification. Dkt. 50 at 27, 28. Lacking any definition in the specification, Clairpath turns to extrinsic evidence from its expert and a dictionary definition: "A server that stores online content." *Id.* at 28. However, extrinsic evidence cannot help Clairpath here. A missing antecedent renders a claim indefinite where, as here, the intrinsic record does not resolve the resulting ambiguity. *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006). Extrinsic evidence cannot supply the certainty the intrinsic record withholds. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996).

Moreover, Clairpath's dictionary definition does nothing to distinguish "the content provider's server" from the "content managing server," which also appears in the claim, or from "the content providing service." '708 patent, claims 1, 6; Bederson Reply Decl. ¶ 87. Neither the claims nor the specification explains the relationship between "the content provider's server" and

those other servers and services. Clairpath's explanation—that the "content provider" described in the specification must maintain servers, and that the claim refers to those servers (Dkt. 50 at 29) – is invented from whole cloth. Bederson Reply Decl. ¶ 87. Furthermore, Clairpath asserts that "the content provider's server" differs from the "content managing server," but also states that "a POSITA would have known that the content providers include a content managing server." Dkt. 50 at 29-30. Thus, even while attempting to distinguish the two concepts, Clairpath conflates them, which underscores the ambiguity that renders the term indefinite. Bederson Reply Decl. ¶ 88.

Clairpath again argues that Apple's EPR request mapped this term to the prior art and precludes Apple's indefiniteness argument here. That argument fails as described in Section II.B.1.a, above. Nor are Apple's positions inconsistent. Applying the EPR broadest reasonable interpretation claim construction standard, Apple identified prior art servers falling within any plausible reading of the term, which is the opposite of conceding a single ascertainable claim scope. Dkt. 50, Ex. C at 47 (identifying Wong's traffic database server as "content provider's server"), 59-60 (identifying same server as "content managing server"). Apple's EPR arguments thus do not undercut its indefiniteness arguments here. Bederson Reply Decl. ¶ 89.

## III. CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court adopt Apple's proposed constructions and hold that claims 1-7, 9, and 11 of the '948 patent and claims 1 and 6 of the '708 patent, and the claims depending from them, are invalid as indefinite.

Dated: September 21, 2026

Respectfully submitted,

*/s/ John Guaragna*
Michael Strapp
Claire Schuster
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel: (617) 406-6000
claire.schuster@us.dlapiper.com

John M. Guaragna
Texas Bar No. 24043308
DLA Piper LLP (US)
303 Colorado, Suite 3000
Austin, TX 78701
Tel: (512) 457-7125
Fax: (512) 457-7001
john.guaragna@us.dlapiper.com

Erin Gibson
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Tel: (202) 799-4000
erin.gibson@us.dlapiper.com

Matthew Satchwell
Chris Katsantonis
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Telephone: (312) 368-4000
matthew.satchwell@us.dlapiper.com
katsantonis@us.dlapiper.com

Jeff Castellano
Matthew Middleton
DLA Piper LLP (US)
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
jeff.castellano@us.dlapiper.com
matthew.middleton@us.dlapiper.com

Mary Dahl
DLA Piper LLP (US)

3203 Hanover Street, Suite 100
Palo Alto, CA 94304
Telephone: (650) 833-2000
mary.dahl@us.dlapiper.com

Gregory Ferroni
Derek Gretkowski
DLA Piper LLP (US)
One Liberty Place,
1650 Market Street Suite 5000
Philadelphia, PA 19103-7300
Telephone: (215) 656-3300
gregory.ferroni@us.dlapiper.com
derek.gretkowski@us.dlapiper.com

***Attorneys for Defendant and Counterclaim Plaintiff Apple Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2026, I served the foregoing Reply Claim Construction Brief via ECF on Plaintiff's counsel of record:

**Steptoe LLP**
Anthony Amerigo Pericolo - Apericolo@steptoe.com
John M. Caracappa - Jcaracappa@steptoe.com
Katherine D. Cappaert - Kcappaert@steptoe.com
Matthew Sim - Msim@steptoe.com
**Ciccarelli Law Firm**
Massimo Ciccarelli - Max@ciccarellilawfirm.com

*/s/ John Guaragna*
John Guaragna