# Exhibit 10

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/016,483 | 07/17/2026 | 8996708 | 127617.00002 | 1278 |

53065 7590 09/15/2026

STEPTOE LLP
1330 CONNECTICUT AVE., NW
WASHINGTON, DC 20036

| EXAMINER | |
|---|---|
| BASEHOAR, ADAM L | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/15/2026 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Erise IP, P.A.
7015 College Blvd.
Ste 700
Overland Park, KS 66211

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/016,483* .

PATENT UNDER REEXAMINATION *8996708* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| ***Order Granting Request For Ex Parte Reexamination*** | **Control No.**<br>90/016,483 | **Patent Under Reexamination**<br>8996708 | |
|---|---|---|---|
| | **Examiner**<br>Adam L Basehoar | **Art Unit**<br>3992 | **AIA (FITF) Status**<br>No |

***--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

The request for *ex parte* reexamination filed 07/17/2026 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892, b)☑ PTO/SB/08, c)☐ Other: ____

1. ☑ The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

/ADAM L BASEHOAR/
Primary Examiner, Art Unit 3992

cc:Requester ( if third party requester )

**DECISION**

1. A substantial new question of patentability ("SNQ") affecting claims 1-11 of United States Patent Number 8,996,708 B2 (hereafter the "Kim '708 patent") is raised by the Request (hereafter the "Request") for *Ex Parte* Reexamination filed on 07/17/2026.

The Request was filed by Third Party Requester ("3PR") Apple Inc.

The Kim '708 patent was originally assigned as U.S. Patent Application No. 13/002,364. The Kim '708 patent then published on 03/31/2015 with claims 1-11. Claims 1 and 6 are independent claims.

The current Patent Owner ("PO") of the Kim '708 patent is Clairpath, LLC.

2. The Examiner notes that on 08/17/2026, PO filed a "PATENT OWNER PRE-ORDER PAPER PROVIDING INFORMATION USEFUL IN MAKING THE SNQ DETERMINATION" (hereafter "Pre-Order Paper"). The Pre-Order Paper has been entered into the record and fully considered by the Examiner.

The Examiner notes that no "Responsive Paper" by 3PR appears to have been filed within fifteen (15) calendar days from the date of service (08/17/2026) of PO's Pre-Order Paper.

## Information Disclosure Statement

3. Regarding Information Disclosure Statement ("IDS") submissions, MPEP 2256 recites the following: "Where patents, publications, and other such documents are submitted by a party (Patent Owner or Requester) in compliance with the requirements of the rules, the requisite degree of consideration to be given to such information will be normally limited by the degree to which the party filing the information citation has explained the content and relevance of the

document. The initials of the examiner placed adjacent to the citations on the form PTO/SB/08 or its equivalent, without an indication to the contrary in the record, do not signify that the document has been considered by the examiner any further than to the extent noted above."

Accordingly, the IDS submissions filed by 3PR on 07/17/2026 have been considered by the Examiner only with the scope required by MPEP 2256, unless otherwise noted.

## Affidavits, Declarations, or Other Written Evidence

4. The Examiner recognizes that a declaration by Dr. Sayfe Kiaei (executed on 07/16/2026 - hereafter the "Kiaei Dec.") has been referenced in support of Third Party Requester. The declaration has been considered and made of record.

The Examiner further notes that affidavits or declarations or other written evidence which explain the contents or pertinent dates of prior art patents or printed publications in more detail may be considered in reexamination (e.g., see: MPEP 2258(I)(E)), but any rejection must be based upon the prior art patents or printed publications as explained by the affidavits or declarations or other written evidence. The rejection in such circumstances cannot be based on the affidavits or declarations or other written evidence as such, but must be based on the prior art patents or printed publications.

In the instant case, the submitted Kiaei Dec. at least further explains the contents of the prior art patents and printed publications (disclosed directly below) in more detail.

## References Cited in the Request

5. A total of seven references in specific combinations have been asserted in the Request as providing teachings relevant to claims 1-11 of the Kim '708 patent. The proposed references which make up the combinations are as follows:

- **Wong** - (U.S. Patent No. 6,865,480 - published 03/08/2005)
- **LYU** - (U.S. Patent Application Publication No. 2008/0146151 - published 06/19/2008)
- **Milley** - (U.S. Patent Application Publication No. 2002/0186676 - published 12/12/2002)
- **Wu** - (U.S. Patent Application Publication No. 2006/0172700 - published 08/03/2006)
- **Mighdoll** - (U.S. Patent No. 5,918,013 - published 06/29/1999)
- **Dekel** - (U.S. Patent Application Publication No. 2006/0083187 - published 04/20/2006)
- **Talvitie** - (U.S. Patent Application Publication No. 2002/0059530 - published 05/16/2002)

6. The Wong, LYU, Milley, Wu, Mighdoll, Dekel, and Talvitie references were not of record during the original prosecution history (i.e., application no. 13/002,364) of Kim '708 patent, and therefore were not previously cited/considered by the original examiner or applied to any of the claims during the original prosecution history of the Kim '708 patent.

## Identification of Every Claim for Which Reexamination is Requested

7. The seven references cited above are discussed in the Request regarding claims 1-11 of the Kim '708 patent. Pages 1-2, 9-11, and 22-28 of the Request discuss and detail out proposed substantial new questions of patentability in light of the specific combinations of said seven references.

**II. STATEMENT POINTING OUT EACH SUBSTANTIAL NEW QUESTION OF PATENTABILITY FOR THE CHALLENGED CLAIMS**

Requester seeks reexamination of Claims 1–11 of the '708 Patent. The above-listed prior art patents and publications present several new, non-cumulative technological teachings that were not previously considered during the prosecution of the applications that resulted in the '708 Patent and thus establish several SNQs with respect to Claims 1–11 of the '708 Patent. See MPEP § 2216. While only one SNQ is required for this Request to be granted, this Request establishes several SNQs which merit review.

The SNQs presented in this Request are based on the prior art reference EX1004-Wong in view of EX1005-Lyu, EX1006-Milley, and EX1007-Wu. Wong in view of Lyu, Milley, and Wu raises SNQs because "the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable; and [] the same question of patentability as to the claim has not been decided by the Office in an earlier concluded examination or review of the patent, raised to or by the Office in a pending reexamination or supplemental examination of the patent, or decided in a final holding of invalidity (after all appeals) by a federal court in a decision on the merits involving the claim." MPEP 2242(I).

| MPEP 2246 | SNQ 1 | SNQ 2 | SNQ 3 | SNQ 4 | SNQ 5 | SNQ 6 |
|---|---|---|---|---|---|---|
| (A) The prior art patents and printed publications which add some new teaching as to at least one claim; | Wong | Wong, Lyu, Milley, Wu | Wu | Wong | Wong | Wong |

(Request, pp. 22-23)

## Prosecution History

8. The Examiner generally agrees with the summation of the original prosecution history of the Kim '708 patent set forth in the Request (e.g., see: Request, pp. 1-2, 9-11, and 27-28; Exhibit 1002). That is to say, during the original prosecution history of the Kim '708 patent the

examiner eventually allowed claims 24-26, 28-29, and 32-37 (renumbered 1-11) and included at least the following information in a Notice of Allowability mailed on 11/28/2014:

**REASONS FOR ALLOWANCE**

4. Claims 24-26, 28-29, and 32-37 are allowed. The prior art of record does not teach neither individually nor in combination the claimed limitations of: "a computer implemented terminal authenticating unit that determines whether the wireless mobile terminal has access to the content provider's server through the second wireless network for receiving the content information, and that includes a computer-implemented terminal identifying unit that identifies whether the wireless communication terminal is a terminal registered with a content-managing server using terminal information, said terminal information being selected from the, group consisting of identification data, a terminal model, and a product number of the wireless communication terminal; and a computer implemented content information displaying unit that, if it is identified that the wireless communication mobile terminal has access to the content providing service, receives content information from the wireless communication mobile terminal and displays the content information on a computer implemented content information displaying device, wherein the computer implemented content information displaying device receives and displays information from the wireless communication terminal, said information being selected from the group consisting of traffic information, life information, and mobile application information, wherein in a case of providing content information related to location information, the computer implemented content information displaying unit displays the content information in association with a map stored in the navigation device" as in claims 24-26, 28-29, and 32-37.

(Notice of Allowability, pp. 2-3)

The Notice of Allowability was mailed subsequent to Applicant's Request for Continued Examination (RCE) filed on 10/18/2013 which included at the least the following amendment to then representative independent application claim 24 (now representative independent patent claim 1):

**24. (Currently Amended)** A computer implemented navigation device comprising: a computer implemented terminal searching unit that searches for a wireless communication mobile terminal through a first wireless network which is using a near field wireless communication in response to a content information providing request, wherein the wireless communication mobile terminal can connect to a second wireless network; a computer implemented terminal authenticating unit that determines whether the wireless mobile terminal has access to the content provider's server through the second wireless network for receiving the content information, and that includes a computer-implemented terminal identifying unit that identifies whether the wireless communication terminal is a terminal registered with a content-managing server using terminal information, said terminal information being selected from the group consisting of identification data, a terminal model, and a product number of the wireless communication terminal; and a computer implemented content information displaying unit that, if it is identified that the wireless communication mobile terminal has access to the content providing service, receives content information from the wireless communication mobile terminal and displays the content information on a computer implemented content information displaying device, wherein the computer implemented content information displaying device receives and displays information from the wireless communication terminal, said information being selected from the group consisting of traffic information, life information, and mobile application information, wherein in a case of providing content information related to location information, the computer implemented content information displaying unit displays the content information in association with a map stored in the navigation device. ~~the content information on a display~~.

(RCE, pp. 2-3)

9. Therefore, in light of the prosecution history of the Kim '708 patent discussed above, at least each of the following particular limitations, individually or in combination, appear to be important to the patentability of representative independent claim 1:

"a computer-implemented terminal identifying unit that identifies whether the wireless communication terminal is a terminal registered with a content-managing server using terminal information, said terminal information being selected from the group consisting of identification data, a terminal model, and a product number of the wireless communication terminal"; and

"displays the content information on a computer implemented content information displaying device, wherein the computer implemented content information displaying device receives and displays information from the wireless communication terminal, said information being selected from the group consisting of traffic information, life information, and mobile application information, wherein in a case of providing content information related to location information, the computer implemented content information displaying unit displays the content information in association with a map stored in the navigation device"

## Substantial New Question of Patentability

10. For requests filed under 35 U.S.C. 302, it is not sufficient that a request for reexamination merely proposes one or more rejections of a patent claim or claims as a basis for reexamination. It must first be demonstrated that a patent or printed publication that is relied upon in a proposed rejection <u>presents a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application that resulted in the patent for which reexamination is requested</u>, and during the prosecution of any other prior proceeding involving the patent for which reexamination is requested (e.g., see: MPEP 2216).

For purposes of reexamination, a cumulative reference that is repetitive is one that substantially <u>reiterates verbatim</u> the teachings of a reference that was <u>either previously relied upon or discussed in a prior Office proceeding</u> even though the title or the citation of the

reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter (e.g., see: MPEP 2258.01).

The presence or absence of "a substantial new question of patentability" determines whether or not reexamination is ordered. For a substantial new question of patentability to be present, it is only necessary that: (A) the prior art patents and/or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable; and (B) the same question of patentability as to the claim has not been decided by the Office in an earlier concluded examination or review of the patent, raised to or by the Office in a pending reexamination or supplemental examination of the patent, or decided in a final holding of invalidity (after all appeals) by a federal court in a decision on the merits involving the claim. If a reexamination proceeding was terminated/vacated without resolving the substantial question of patentability question, it can be re-presented in a new reexamination request. It is not necessary that a "prima facie" case of unpatentability exist as to the claim in order for a substantial new question of patentability to be present as to the claim. Thus, a substantial new question of patentability as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications (e.g., see: MPEP 2242(I)).

In a decision to order reexamination made on or after November 2, 2002, reliance on old art does not necessarily preclude the existence of a substantial new question of patentability that

is based exclusively on that old art. See Public Law 107-273, 116 Stat. 1758, 1899-1906 (2002), which expanded the scope of what qualifies for a substantial new question of patentability upon which a reexamination may be based. Determinations on whether a substantial new question of patentability exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. For example, a substantial new question of patentability may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier examination(s), in view of a material new argument or interpretation presented in the request. Such material new argument or interpretation may be based solely on claim scope of the patent being reexamined (e.g., see: MPEP 2242(II)(A)).

11. For purposes of determination, independent claim 1 is used as a representative claim for the proposed rejections in the Request. The italicized/bolded sections of representative independent claim 1, shown directly below, are utilized by the Examiner to show how specific teachings of the proposed references create a substantial new question of patentability in light of the prosecution history as discussed above.

**Claim 1:**

**[1-Pre]** A computer implemented navigation device comprising:

**[1-a]** a computer implemented terminal searching unit that searches for a wireless communication mobile terminal through a first wireless network which is using a near field wireless communication in response to a content information providing request,

**[1-b]** wherein the wireless communication mobile terminal can connect to a second wireless network;

**[1-c]** a computer implemented terminal authenticating unit that determines whether the wireless mobile terminal has access to the content provider's server through the second wireless network for receiving the content information,

**[1-d]** ***and that includes a computer-implemented terminal identifying unit that identifies whether the wireless communication terminal is a terminal registered with a content-managing server using terminal information***,

**[1-e]** ***said terminal information being selected from the group consisting of identification data, a terminal model, and a product number of the wireless communication terminal***;

**[1-f]** and a computer implemented content information displaying unit that, if it is identified that the wireless communication mobile terminal has access to the content providing service, receives content information from the wireless communication mobile terminal and ***displays the content information on a computer implemented content information displaying device***,

**[1-g]** ***wherein the computer implemented content information displaying device receives and displays information from the wireless communication terminal***,

**[1-h]** ***said information being selected from the group consisting of traffic information, life information, and mobile application information***,

**[1-i]** ***wherein in a case of providing content information related to location information, the computer implemented content information displaying unit displays the content information in association with a map stored in the navigation device***.

## Claim Interpretation

12. As set forth in MPEP 2240, in making the determination of whether to order reexamination, the Office will determine the proper meaning of the patent claims by giving the claims their broadest reasonable interpretation ("BRI") consistent with the specification (see *In re Yamamoto*, 740 F.2d 1569 (Fed. Cir. 1984)).

## Discussion of References that Raise a SNQ

13. All of the proposed references raise a substantial new question as noted below.

A. Wong, LYU, Milley, and Wu (SNQ 1)

The teachings of the Wong reference have been summarized in the instant Request (e.g., see: Request, pp. 13-14 and 22-28; Kiaei Dec., ¶¶ 40-42).

For example, the Wong reference generally teaches a "display method and apparatus for a navigation system for receiving traffic information and displaying traffic incidents in a manner easily and quickly comprehensible by a user of the navigation system" (Abstract). More specifically, Wong discloses a "navigation system which incorporates a short distance radio transmitter such as a Bluetooth transceiver and a Bluetooth compatible cellular phone. The navigation system is formed of a display 12 of the navigation system, a navigation system controller 14, a short distance transmitter 16, and a cellular phone 18" (column 5, lines 13-26; Figs. 1B and 6A).

FIG. 1B




FIG. 6A




The teachings of the LYU reference have been summarized in the instant Request (e.g., see: Request, pp. 14-16 and 22-28; Kiaei Dec., ¶¶ 43-45). The LYU reference is relied upon to buttress and provide additional teachings in conjunction with the Wong reference to at least read on certain limitations of representative independent claim 1.

For example, the LYU reference generally teaches "an apparatus and method for Bluetooth connection in a portable terminal, and in particular, to an apparatus and method for connecting a Bluetooth® (hereinafter 'Bluetooth') portable terminal to a Bluetooth device closest to the Bluetooth portable terminal when a Bluetooth connection event occurs in the Bluetooth portable terminal" (Abstract; Paragraphs 3 and 38-40; Fig. 4).




FIG.4

The teachings of the Milley reference have been summarized in the instant Request (e.g., see: Request, pp. 16-18 and 22-28; Kiaei Dec., ¶¶ 46-48). The Milley reference is relied upon to buttress and provide additional teachings in conjunction with the Wong and/or LYU reference(s) to at least read on certain limitations of representative independent claim 1.

For example, the Milley reference generally teaches "obtaining and displaying Internet content using a remote secondary display and a primary handheld computing device. The primary device includes a cellular or satellite modem to connect to the Internet and wireless data transport system to communicate with the secondary device. The primary device retrieves network data from the Internet and transmits it to the secondary device for display" (Abstract). More specifically, Milley discloses "To initiate a network connection, the user must start an application, such as a Web browser, on the secondary device, which will then request a network connection. The secondary will then inspect its own settings, and the session settings supplied by the primary, and will decide which network connection is to be used. If the secondary has no

connection whatsoever, then the connection will be initiated through the primary" (Paragraph 97; Fig. 1C).




FIGURE 1C

The teachings of the Wu reference have been summarized in the instant Request (e.g., see: Request, pp. 18-19 and 22-28; Kiaei Dec., ¶¶ 49-51). The Wu reference is relied upon to buttress and provide additional teachings in conjunction with the Wong, LYU, and/or Milley reference(s) to at least read on certain limitations of representative independent claim 1.

For example, the Wu reference generally relates to "entertainment and/or information systems, and more specifically to using a mobile telephone to authenticate a user of an entertainment and/or information system" (Abstract; Paragraphs 1 and 6-8). More specifically, Wu discloses that "cell phone 102 transmits a serial number associated with cell phone 102 to client device 112. In an exemplary implementation, the serial number may be combined with other information specific to the cell phone and encrypted to prevent other devices from being able to pretend to be that cell phone…Client device 112 then identifies the individual who owns the cell phone (and is assumed to be using the cell phone) based on the received serial number.

The individual's identity is then used to apply personal settings and/or to provide access to personalized services via entertainment system 110…Alternatively, client device 112 may forward the received serial number to television service provider 116, which then communicates with telecommunications operator 108 over integration network 126 to identify and authenticate the cell phone owner. Integration with telecommunications provider 108 is optional and may be done in scenarios where television service provider 116 wants to enforce that the individual is a subscriber with a particular telecommunications provider before allowing them to use the service" (Paragraphs 24-25 and 43; Fig. 1).




Figure 1

The Wong reference is cited in the Request as a reference used in combination with the LYU, Milley, and Wu references to at least read on representative independent claim 1 (e.g., see: Request, pp. 29-86; Kiaei Dec, ¶¶ 63-161). As shown in the Request and noted above, the Wong reference in combination with the LYU, Milley, and Wu references appears to at least teach or suggest:

(Claim 1)

**[1-d]** ***and that includes a computer-implemented terminal identifying unit that identifies whether the wireless communication terminal is a terminal registered with a content-managing server using terminal information***… **[1-e]** ***said terminal information being selected from the group consisting of identification data, a terminal model, and a product number of the wireless communication terminal*** (e.g., see: Wu, Paragraphs 6-8: "an easier, secure way to authenticate a single user of an entertainment system so that personalized data can be presented via the entertainment system…via a mobile telephone…When the mobile telephone is brought physically within range of the system, the mobile telephone automatically transmits a security key to the system via the short range wireless network. When the security key is verified, a system user account associated with the owner of the mobile phone is activated such that the system can apply personalized settings and/or allow access to personalized services"; Paragraphs 24-25: "cell phone 102 transmits a serial number associated with cell phone 102 to client device 112. In an exemplary implementation, the serial number may be combined with other information specific to the cell phone and encrypted to prevent other devices from being able to pretend to be that cell phone…Client device 112 then identifies the individual who owns the cell phone (and is assumed to be using the cell phone) based on the received serial number. The individual's identity is then used to apply personal settings and/or to provide access to personalized services via entertainment system 110…Alternatively, client device 112 may forward the received serial number to television service provider 116, which then communicates with telecommunications operator 108 over integration network 126 to identify and authenticate the cell phone owner. Integration with telecommunications provider 108 is optional and may be done in scenarios where television service provider 116 wants to enforce that the individual is a subscriber with a particular telecommunications provider before allowing them to use the

service"; Paragraph 43: "Communication between client device 112 and television service provider 116 may be utilized to receive media content and other data from television service provider 116 and to request authentication of a particular user based on a cell phone serial number"; Figs. 1 and 3); and

**displays the content information on a computer implemented content information displaying device**…**[1-g] wherein the computer implemented content information displaying device receives and displays information from the wireless communication terminal**…**[1-h] said information being selected from the group consisting of traffic information, life information, and mobile application information**…**[1-i] wherein in a case of providing content information related to location information, the computer implemented content information displaying unit displays the content information in association with a map stored in the navigation device.** (e.g., see: Wong, Abstract: "A display method and apparatus for a navigation system for receiving traffic information and displaying traffic incidents in a manner easily and quickly comprehensible by a user of the navigation system"; column 3, lines 10-32: "the display method for a navigation system includes the steps of: receiving traffic information through a wireless communication device…The display apparatus is configured by various means for achieving the display methods described above"; column 5, lines 11-42: "database includes information on traffic, movie, sports, news, weather and the like…navigation system which incorporates a short distance radio transmitter such as a Bluetooth transceiver and a Bluetooth compatible cellular phone. The navigation system is formed of a display 12 of the navigation system, a navigation system controller 14, a short distance transmitter 16, and a cellular phone 18…navigation system detects the position of a user such as a current vehicle position, reads out map data pertaining to an area at the vehicle current

position from a data storage medium, for example, a CD-ROM (compact disk read-only memory) or a DVD (digital versatile disc). The navigation system displays a map image on a monitor screen (display) while superposing a mark representing the current location of the vehicle on a predetermined portion of the map image…it is also possible that the map data and the route guidance function are provided by a navigation server remote from the user so long as a current user's position is known to the navigation server"; column 8, line 44 – column 9, line 43: "The navigation system further includes a radio transmitter 58 for wireless communication with a database service provider, and a traffic information memory 59 for storing the traffic information. The radio transmitter 58 corresponds to the radio transmitters 14 and 16 in FIGS. 1A and 1B…receives traffic data from a service provider or other event data from corresponding service providers through wireless data transmission…traffic database server 81 may be one of many other types of database. An example of other types of database include movies, sports games, dramas, TV programs, races, news, shopping information, and weather forecast. Typically, such databases are aggregated to the content server or content aggregator 82…The user system 88 receives the traffic information through the wireless delivery 84 and the radio transmitter 58 (FIG. 4). The navigation system processes the traffic data in combination with the position data and the calculated route data to display the traffic incidents in accordance with the present invention"; column 10, lines 7-33: "When receiving the traffic information through the wireless communication such as shown in FIG. 6A, the navigation system combines the traffic information with the map data. Then, as shown in FIG. 7, the navigation system displays the traffic incident icons on the map at the locations specified by the traffic information"; Figs. 1B, 4, 6a, and 7).

FIG. 7




As noted above, the Wong, LYU, Milley, and Wu references were neither previously cited/considered nor applied to any of the claims during the original prosecution history of the Kim '708 patent.

It is agreed that the consideration of the Wong reference in combination with LYU, Milley, and Wu raises a SNQ as to representative independent claim 1 of the Kim '708 patent as pointed out above. Therefore, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not claims 1, 2, 6, 7, and 9 are patentable.

Accordingly, the Wong reference in combination with LYU, Milley, and Wu raises a substantial new question of representative independent claim 1, which question has not been decided in a previous examination of the Kim '708 patent nor was there a final holding of invalidity of said claim by the Federal Courts regarding the Kim '708 patent.

B. Mighdoll (SNQ 2), Dekel (SNQ 3), and Talvitie (SNQ 4)

The Mighdoll (Request, pp. 19-20, 28, and 104-111), Dekel (Request, pp. 20-21, 28, and 111-121), and Talvitie (Request, pp. 21-22, 28, and 122-126) references are cited in the Request as references used in specific combinations with the Wong, LYU, Milley, and Wu references, each cited and discussed directly above, to read on dependent claims 3 and 8 (in view of Mighdoll), dependent claims 4 and 10 (in view of Dekel), and dependent claims 5 and 11 (in view of Dekel and Talvitie) of the Kim '708 patent. The Mighdoll, Dekel, and Talvitie references alone do not raise a SNQ. However, in light of the SNQ raised above in view of the combination of the Wong, LYU, Milley, and Wu references, the Mighdoll, Dekel, and Talvitie references each also raise an SNQ at least in view of their dependency.

As noted above, the Mighdoll, Dekel, and Talvitie references were neither previously cited/considered nor applied to any of the claims during the original prosecution history of the Kim '708 patent.

It is agreed that the consideration of the Mighdoll, Dekel, and Talvitie references in specific combinations with the Wong, LYU, Milley, and Wu references raise a SNQ as to the claims of the Kim '708 patent as pointed out above. Therefore, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable.

Accordingly, the Mighdoll, Dekel, and Talvitie references in specific combinations with the Wong, LYU, Milley, and Wu references raise a substantial new question, which question has not been decided in a previous examination of the Kim '708 patent nor was there a final holding of invalidity of said claims by the Federal Courts regarding the Kim '708 patent.

## Scope of Reexamination

14. Claims 1-11 **will be** reexamined as requested in the Request.

## 35 U.S.C. 325

15. A review of the post grant history for the underlying Kim '708 patent indicates that there have been no other Office post grant challenges made to the patent (Reexamination Proceedings or *Inter Partes* Review, Post Grant Review, Covered Business Method trials). Accordingly, a discretionary denial of reexamination pursuant to 35 USC 325(d) is **not** applicable.

## Response to Patent Owner Pre-Order Paper

16. As noted above, the Pre-Order Paper has been entered into the record and fully considered. The Examiner is respectfully not persuaded with respect to PO's various positions regarding whether or not SNQs were raised.

First, some of PO's arguments in the Pre-Order Paper are directed to cumulative prior art teachings (e.g., see: Pre-Order Paper, pp. 12-15: "The Request Does Not Raise an SNQ Because It Relies on Cumulative Art Addressing Subject Matter Already Considered by the Office"). Such arguments are not considered here because the "Pre-order Procedure regarding Substantial New Question determination in *ex parte* Reexamination Proceedings" (hereafter the "SNQ Notice") expressly states that (underline emphasis added):

> The existing guidance in MPEP §§ 2216 and 2242 that a substantial new question must be based on a new teaching (i.e., a new, non-cumulative technical teaching or a new light that escaped review during earlier examination) remains in effect. Where the Office finds that an alleged teaching(s) is not new, the Office will continue to refuse reexamination based on such teaching(s). Where the Office issues an order granting reexamination, the patent owner will continue to be able to challenge a finding that an alleged teaching(s) is

> new in a patent owner's statement under 37 CFR 1.530 or in a patent owner's response to an Office action. Given the limited timeframe for determination of a substantial new question, such arguments should not be included in a patent owner pre-order paper.

After an Order granting reexamination is mailed, PO will continue to be able to challenge a finding that an alleged teaching(s) is new in a Patent Owner Statement under 37 C.F.R. § 1.530 (filed in accordance with MPEP § 2249) or in remarks in response to any Office Action.

The Examiner notes, as pointed about above, that MPEP 2242(II)(A) and MPEP 2258.01 at least respectively state (underline emphasis added):

> In a decision to order reexamination made on or after November 2, 2002, reliance on old art does not necessarily preclude the existence of a substantial new question of patentability that is based exclusively on that old art. See Public Law 107-273, 116 Stat. 1758, 1899-1906 (2002), which expanded the scope of what qualifies for a substantial new question of patentability upon which a reexamination may be based. Determinations on whether a substantial new question of patentability exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. For example, a substantial new question of patentability may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier examination(s), in view of a material new argument or interpretation presented in the request. Such material new argument or interpretation may be based solely on claim scope of the patent being reexamined.
>
> and
>
> For purposes of reexamination, a cumulative reference that is repetitive is one that substantially reiterates verbatim the teachings of a reference that was either previously relied upon or discussed in a prior Office proceeding even though the title or the citation of the reference may be different. However, it is expected that a repetitive reference which cannot be considered by the Office during reexamination will be a rare occurrence since most references teach additional information or present information in a different way than other references, even though the references might address the same general subject matter.

Second, some of PO's arguments in the Pre-Order Paper are directed to non-analogous art (e.g., see: Pre-Order Paper, pp. 15-17: "Requester's Reliance on Non-Analogous Art Cannot Support an SNQ"). The standard for raising an SNQ is provided in MPEP 2242(I), which states as follows: [a] prior art patent or printed publication raises a substantial question of patentability

where there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable. Nowhere in MPEP 2242(I) does the standard for raising an SNQ require evaluating for analogous art, and thus PO's statement that "A reference can contribute to an SNQ only if it is analogous art" is incorrect.

In assessing the present Request and PO's Pre Order Paper, the Examiner used the above standard along with the other guidelines established in MPEP 2242(I), which does not necessarily align with the requirements of patentability under 35 U.S.C. 102 and/or 103. That is, PO's arguments directed to non-analogous art in the Pre-Order Paper are ultimately directed to patentability (e.g., see: MPEP 2131.05 and 2141.01(a)). Such arguments are not considered here since they are directed to deciding whether or not these claims are patentable as opposed to whether or not there is a substantial likelihood that an examiner would consider these new, non-cumulative technological teachings important in deciding whether or not these claims are patentable, or in other words an SNQ. As noted in MPEP 2242(I)(b), an SNQ can be present even if a prior art rejection could not necessarily be made:

> It is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim. Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications. As to the importance of the difference between "a substantial new question of patentability" and a "prima facie" case of unpatentability see generally *In re Etter*, 756 F.2d 852, 857 n.5, 225 USPQ 1, 4 n.5 (Fed. Cir. 1985).

Further, MPEP 2246 expressly states that no statement will be made in the Order as to whether claims are rejected over prior art:

> In the decision on the request, the examiner will not decide, and no statement should be made as to, whether the claims are rejected over the patents and printed publications. The examiner does <u>not</u> decide the question of patentability of the claims in the decision on the

> request. The examiner only decides whether there is a substantial new question of patentability to grant the request to order reexamination.

As noted above, after an Order granting reexamination is mailed, PO may make arguments concerning anticipation and/or obviousness in a Patent Owner Statement under 37 C.F.R. § 1.530 (filed in accordance with MPEP § 2249) or in remarks in response to any future claim rejection(s) during reexamination.

Third, as noted above, the standard for raising an SNQ is provided in MPEP 2242(I), which states as follows: [a] prior art patent or printed publication raises a substantial question of patentability where there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable. In assessing the present Request and PO's Pre Order Paper, the Examiner used this standard along with the other guidelines established in MPEP 2242(I), which does not necessarily align with the requirements of patentability under 35 U.S.C. 102 and/or 103. That is, some of PO's additional arguments in the Pre-Order Paper are ultimately directed to patentability (e.g., see: Pre-Order Paper, pp. 17-26: "Ground 1…Ground 2…Ground 3…Ground 4"). Such arguments are not considered here since they are directed to deciding whether or not these claims are patentable as opposed to whether or not there is a substantial likelihood that an examiner would consider these new, non-cumulative technological teachings important in deciding whether or not these claims are patentable, or in other words an SNQ. As noted in MPEP 2242(I)(b), an SNQ can be present even if a prior art rejection could not necessarily be made:

> It is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim. Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications. As to the importance of the difference between "a substantial new question of patentability" and a "prima facie"

> case of unpatentability see generally *In re Etter*, 756 F.2d 852, 857 n.5, 225 USPQ 1, 4 n.5 (Fed. Cir. 1985).

Further, MPEP 2246 expressly states that no statement will be made in the Order as to whether claims are rejected over prior art:

> In the decision on the request, the examiner will not decide, and no statement should be made as to, whether the claims are rejected over the patents and printed publications. The examiner does <u>not</u> decide the question of patentability of the claims in the decision on the request. The examiner only decides whether there is a substantial new question of patentability to grant the request to order reexamination.

After an Order granting reexamination is mailed, PO may make arguments concerning anticipation and/or obviousness in a Patent Owner Statement under 37 C.F.R. § 1.530 (filed in accordance with MPEP § 2249) or in remarks in response to any future claim rejection(s) during reexamination.

<u>Fourth</u>, some of PO's arguments in the Pre-Order Paper are directed to the Kiaei Dec. (e.g., see: Pre-Order Paper, pp. 26-27: "The Kiaei Declaration Cannot Establish an SNQ"). As noted above in the "Affidavits, Declarations, or Other Written Evidence" section, the Examiner generally agrees with PO that an expert Declaration alone cannot establish an SNQ. That is to say, declarations or other written evidence may be considered in reexamination but any rejection(s) (or SNQ determination(s)) must be based upon the teachings of the prior art patents or printed publications themselves. The Examiner also acknowledges that the Kiaei Dec. appears to substantially mirror the analysis in the Request. Regardless, as noted above in the "Discussion of References that Raise a SNQ" section, the cited prior art patents or printed publications themselves are deemed to raise at least one SNQ with regard to the claims of the Kim '708 patent.

<u>Finally</u>, some of PO's arguments in the Pre-Order Paper are directed to 3PR's claim constructions (e.g., see: Pre-Order Paper, pp. 27-28: "Requester's Inconsistent Claim-

Construction Positions Undermine Any Alleged SNQ"). The Examiner has noted PO's concern but 3PR's claim construction in the related district-court litigation has no influence on the SNQ determination(s) made herein. As noted above in the "Claim Interpretation" section, the claims of the Kim '708 patent were given their BRI consistent with the specification when making the determination of whether to order reexamination. While merely speculating, the Examiner further notes that some issues dealing with inconsistent claim constructions could be due to 3PR being prohibited from advancing indefinite positions for original claims of the Kim '708 patent in *Ex Parte* reexamination (e.g., see: MPEP 2258(II)).

PO may reiterate any appropriate argument in a post-Order Patent Owner Statement or in response to the first Office Action (if necessary).

**Conclusion**

17. Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extension of time in *Ex Parte* Reexamination proceedings are provided for in 37 CFR 1.550(c).

The Patent Owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 8,996,708 B2 throughout the course of this reexamination proceeding. The Third Party Requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

18. All correspondence relating to this *Ex Parte* Reexamination proceeding should be directed:

Electronically: Registered users may submit via Patent Center at https://patentcenter.uspto.gov/.

By Mail to: Mail Stop *Ex Parte* Reexam
Central Reexamination Unit
Commissioner for Patents
United States Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

By FAX to: (571) 273-9900
Central Reexamination Unit

By hand: Customer Service Window

Knox Building
501 Dulany Street
Alexandria, VA 22314

For Patent Center transmissions, 37 CFR 1.8(a)(1)(i)(C) and (ii) states that correspondence (except for a request for reexamination and a corrected or replacement request for reexamination) will be considered timely filed if (a) it is transmitted via the USPTO patent electronic filing system in accordance with 37 CFR 1.6(a)(4), and (b) includes a certificate of transmission for each piece of correspondence stating the date of transmission, which is prior to the expiration of the set period of time in the Office Action.

Any inquiry concerning this communication should be directed to Adam Basehoar at telephone number 571-272-4121.

/Adam L Basehoar/
Primary Examiner, Art Unit 3992

Conferees:

/ALEXANDER J KOSOWSKI/
Supervisory Patent Examiner, Art Unit 3992